UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN M. LIPSCOMB,

                      Petitioner,

v.

WARDEN MICHAEL MEISNER,

                      Respondent.

Case No. 21-CV-1459-JPS

**ORDER**

## 1.    INTRODUCTION

In December 2021, Petitioner Kevin M. Lipscomb ("Petitioner"), through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. In February 2022, Magistrate Judge William E. Duffin granted Petitioner's motion to stay the proceedings and hold his petition in abeyance to exhaust his claims in state court. ECF Nos. 2, 4. The following year, Magistrate Judge Duffin granted Petitioner's motion to lift the stay, ordered the Clerk of Court to docket Petitioner's proposed amended petition, and set a briefing schedule on the amended petition. ECF Nos. 10, 11.

The amended petition, ECF No. 12, is now fully briefed. ECF Nos. 17, 19, 22. In it, Petitioner raises just a single ground for relief: ineffective assistance of appellate counsel. ECF No. 12 at 6–7; *see infra* section 4.1. For the reasons discussed herein, the Court will deny the amended petition and dismiss this case with prejudice.

## 2. BACKGROUND

### 2.1 The Robbery and the Trial

This § 2254 action arises out of Petitioner's conviction in Waukesha County Circuit Court Case No. 2015CF188. ECF No. 12 at 2. Petitioner was charged in that case with armed robbery as a party to a crime. ECF No. 16-2 at 2.

The victim of the robbery, DK, ran a salvage yard that paid cash for scrap metal. *Id.* Petitioner's girlfriend, Andria Noel ("Noel"), was a bank teller who frequently assisted DK with her cash withdrawals for the business, *id.*, and DK had done business with Petitioner in the past, ECF No. 16-12 at 27–28. One day, just fifteen minutes after DK had withdrawn a large sum in cash from the bank (assisted by Noel), a masked and armed man came to DK's house and robbed her of the cash. ECF No. 16-2 at 2. DK believed that the robber had most likely been waiting for her at the house, as opposed to having followed her home from the bank. ECF No. 16-13 at 11.

DK later informed police that the robber left "quickly" and had a limp, although she did not describe the limp with any particularity at trial. ECF No. 16-2 at 2; ECF No. 16-10 at 67. She also described the robber as being a roughly 5'11" Black man. ECF No. 16-10 at 21, 75–76; ECF No. 16-11 at 6. The robber did not take DK's purse or wallet—just the large sum of cash recently withdrawn from the bank. ECF No. 16-11 at 7–8. An officer later agreed at trial that it was "unusual that a robber would take one thing but not take a purse or wallet" unless the robber was specifically aware of and looking for that particular thing. *Id.* at 8–9.

After the robbery, a police dog followed the robber's scent along his escape route and eventually alerted to a latex glove just a few minutes' walk

from DK's house. ECF No. 16-2 at *2*. The outside of the glove contained Petitioner's DNA. *Id.* After Petitioner's arrest, police found a package of similar latex gloves (containing three of the four gloves originally in it) and a gun case and ammunition in his home. *Id.*; ECF No. 16-16 at 8–9. Police also found a business card from DK's salvage yard in the safe in Petitioner's home. ECF No. 16-16 at 26. Evidence was also introduced that Petitioner's cellphone "pinged" off a cell tower 0.6 miles away from DK's house at the time of the robbery. ECF No. 16-2 at 2–3.

At trial, Petitioner—who has a limp due to below-the-knee paralysis—maintained in his defense that his limp is so severe that he would not have been able to leave the scene of the robbery "quickly." *Id.* at 3. His trial counsel asked for the trial court's "opinion" on whether Petitioner could "demonstrate . . . how he walks." *Id.* When the trial court responded that such a demonstration would open the door for the State to cross examine Petitioner, Petitioner decided not to take the stand. *Id.* Instead, Noel demonstrated how Petitioner would "hop" or "skip" when he walks and testified that "it's more of a skip hop skip." *Id.*; *see* ECF No. 16-22 at 56.

Noel also testified, as did Petitioner's brother, that Petitioner uses latex gloves for personal hygiene reasons related to his paralysis. ECF No. 16-2 at 3. They also testified that Petitioner may have been within 0.6 miles of the robbery at the time because he often flew his drone in rural areas such as that where the glove was found. *Id.* The jury found Petitioner guilty, "apparently rejecting the defense theory that he happened to have been in the area flying his drone at the time of the robbery and must have dropped one of the gloves that he regularly carried with him." *Id*. The trial court

sentenced Petitioner to 33 years of imprisonment and extended supervision. ECF No. 16-1 at 1.

### 2.2 The Direct Appeal

Petitioner appealed and asserted that the trial court's refusal to allow him to demonstrate his gait for the jury without being sworn or subject to cross-examination was erroneous as an evidentiary matter. ECF No. 16-2 at 3–4. The Wisconsin Court of Appeals agreed that the demonstration of Petitioner's limp "should have been allowed," but it nevertheless concluded that the trial court's failure to allow the demonstration was harmless error "[g]iven the ample evidence of his guilt." *Id*. at 4.

### 2.3 The Wis. Stat. § 974.06 Motion

Thereafter, Petitioner filed a § 974.06 motion asserting that his conviction resulted from both his trial and appellate attorneys' ineffectiveness for "failing to argue that the trial court's prohibition of his demonstration of his limp . . . violated his constitutional right to present a defense." *Id.*; ECF No. 16-4. The trial court denied the motion without a hearing, concluding that "there is no basis to conclude that there would be a reasonable probability of a different outcome if [Petitioner] had gotten up and demonstrated his walk to the jury." ECF No. 16-2 at 4.

### 3. STANDARD OF REVIEW ON HABEAS

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United

States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam)). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141 (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000) and *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)). Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011) (citing *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)). It is not enough for the petitioner to prove that the state courts were wrong; he must also prove they acted unreasonably. *Harrington*, 562 U.S. at 101; *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even "clear error" will not suffice.'" (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014))).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford,* 537 U.S. at 24; *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." (citing *Wright v. West*, 505 U.S. 277, 308–09 (1992) (Kennedy, J., concurring))).

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Id.* (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)). This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was based upon an unreasonable determination of the facts in light of the

evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013) (quoting *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013)). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546 (quoting *Newman*, 726 F.3d at 928). "A decision 'involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 17 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question de novo. *Carlson v. Jess*, 526 F.3d 1018, 1023 (7th Cir. 2008). A federal court also reviews a claim de novo where the state courts failed to "reach the merits" of the federal constitutional claim entirely. *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.' 28 U.S.C. § 2254(d). Instead, the claim is reviewed *de novo*." (citing *Rompilla v. Beard*, 545 U.S. 374 390 (2005) and *Wiggins v. Smith*, 539 U.S. 510, 534 (2003))).

4. **LAW & ANALYSIS**

   4.1 **Grounds for Relief**

The Court must begin with a threshold issue: what ground or grounds for relief are presented in Petitioner's amended petition for this Court's review. The Court must address this question because, notwithstanding Petitioner's recitation of a sole ground for relief in his amended petition—"Ineffective assistance of appellate counsel," ECF No. 12 at 6–7—one could interpret his brief in support of the amended petition as additionally purporting to raise a stand-alone ground of ineffective assistance of trial counsel, as well as a violation of his "due process right to present a defense." ECF No. 17 at 7; *id.* at 8 (arguing that Petitioner "had a constitutional right to present a defense during his trial" and that the Court's "review[] [of] this argument [is] de novo . . . " (citing § 2254(d) and *Cone*, 556 U.S. at 472)).

Petitioner's amended petition solely presents an ineffective assistance of appellate counsel ground for relief, and that is the sole ground for relief that the Court will evaluate. Ineffective assistance of trial counsel and ineffective assistance of appellate counsel are distinct grounds for relief, and they accordingly must be set forth separately in a petition for habeas corpus; the former is not considered automatically embedded as a stand-alone ground for relief in the latter. *See Oliver v. Pfister*, No. 13 C 426, 2013 U.S. Dist. LEXIS 87233, at *14–15 (N.D. Ill. June 20, 2013) ("Claims of ineffective assistance of trial and appellate counsel are distinct . . . ." (citing *United States ex rel. Barbosa v. Hardy*, No. 11 C 1622, 2011 U.S. Dist. LEXIS 131974 (N.D. Ill. Nov. 14, 2011))). The form petition explicitly instructs the drafter to "state every ground" for relief and warns that if the drafter "fail[s] to set forth all the grounds in this petition, [the petitioner] may be barred

Page 8 of 20
Case 2:21-cv-01459-JPS    Filed 09/19/24    Page 8 of 20    Document 23

from presenting additional grounds at a later date." ECF No. 12 at 6. Accordingly, while the Court will consider Petitioner's other arguments to the extent that they are relevant to Petitioner's ineffective assistance of appellate counsel claim, it will not consider them as stand-alone grounds for relief.

While the Court is obligated to perform a more liberal review of a pro se Petitioner's filings, the Court has no such obligation with respect to a represented Petitioner, as in this case. *Blake v. United States*, 841 F.2d 203, 205 (7th Cir. 1988) (citing *Haines v. Kerner*, 404 U.S. 519 (1972) and *Sizemore v. Williford*, 829 F.2d 608, 609 (7th Cir. 1987)). The Court is entitled to expect technical compliance by an attorney, *cf. Pierce v. Ill. Dep't of Human Servs.*, 355 F. App'x 28, 30 (7th Cir. 2009) (collecting cases), and it cannot read in grounds for relief that a petitioner's attorney neglected to expressly set forth in the petition. *See United States v. Zepeda,* Nos. 2:05-cr-41 and 2:10-cv-221, 2011 U.S. Dist. LEXIS 55631, at *13 (N.D. Ind. May 24, 2011) ("[A] district court . . . may not rewrite a petition to include claims that were never presented." (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999))) (internal quotation marks omitted).

For all these reasons, the Court reads Petitioner's amended petition as raising only a ground of ineffective assistance of appellate counsel, and it considers only that ground for relief.

### 4.2 Ground of Ineffective Assistance of Appellate Counsel

#### 4.2.1 Procedural Default

Having clarified that Petitioner proceeds solely on a claim of ineffective assistance of appellate counsel, the Court proceeds in addressing that claim. Respondent concedes that that ground for relief is timely and that Petitioner has exhausted his administrative state remedies with respect

to it. ECF No. 16 at 1–2. Respondent also conceded in his answer that Petitioner "has not procedurally defaulted the claim in the Amended Petition that appellate counsel was ineffective for not challenging the effectiveness of trial counsel." *Id.* at 2.

Respondent changes course, however, in his brief in opposition to the amended petition and argues that Petitioner's ineffective assistance of appellate counsel ground is procedurally defaulted "because [Petitioner] failed to sufficiently allege that the performance of trial counsel was prejudicial." ECF No. 19 at 2. Specifically, Respondent notes that "Wisconsin courts . . . may deny relief without a hearing if the defendant is due no relief as a matter of law" pursuant to *State v. Allen*, 682 N.W.2d 433, ¶ 36 (Wis. 2004). *Id.* at 15. Respondent argues that the state court did so in this case; the trial court summarily denied Petitioner's § 974.06 motion without a hearing because, as Respondent characterizes it, Petitioner failed to "allege[] sufficient facts entitling him to a hearing." *Id.* (quoting *State v. Sholar*, 912 N.W.2d 89, ¶¶ 47–51 (Wis. 2018)). Respondent contends that this circumstance represents a procedural default because "[t]he *Allen* rule is an adequate and independent state law ground for the purposes of procedural default in federal habeas corpus." *Id.* (citing *Lee v. Foster*, 750 F.3d 687, 693–94 (7th Cir. 2014)).

The Wisconsin Court of Appeals, in addressing Petitioner's argument that his "conviction was the result of both his trial and appellate attorneys' ineffectiveness for failing to argue that the trial court's prohibition of his demonstration of his limp . . . violated his constitutional right to present a defense," began by noting that it "review[s] de novo the issue of whether a Wis. Stat. § 974.06 postconviction motion sufficiently alleges ineffective assistance of counsel to require an evidentiary hearing."

ECF No. 16-2 at 4–5 (citing *State v. Balliette*, 805 N.W.2d 334, ¶ 18 (Wis. 2011)). "It is within the trial court's discretion," the court further wrote, "to deny an evidentiary hearing when the record conclusively shows that the defendant is not entitled to relief." *Id.* (citing *Balliette*, 805 N.W.2d ¶ 18). Such was the case, according to the Wisconsin Court of Appeals, because the "evidence against [Petitioner] was very powerful" and there was no "reasonable probability of a different outcome" even if Petitioner's trial counsel had appropriately objected to the trial court's erroneous conclusion that allowing Petitioner to demonstrate his limp to the jury would open him up to cross-examination, and even if the trial court had accordingly allowed Petitioner to demonstrate his limp to the jury without cross-examination. *Id.* at 6. The Wisconsin Court of Appeals accordingly "affirm[ed] the trial court's order denying [Petitioner's] motion . . . without an evidentiary hearing." *Id.* at 7.

"A claim will be procedurally defaulted—and barred from federal review—if the last state court that rendered judgment 'clearly and expressly' states that its judgment rests on a state procedural bar." *Lee*, 750 F.3d at 693 (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989) (internal quotation marks omitted)). Federal courts "will not entertain questions of federal law in a habeas petition when the state procedural ground relied upon in the state court 'is independent of the federal question and adequate to support the judgment.'" *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "An independent state ground will be found 'when the court actually relied on the procedural bar as an independent basis for its disposition of the case.'" *Id.* (quoting *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012)). "A state law ground is adequate 'when it is a firmly

established and regularly followed state practice at the time it is applied.'" *Id.* (quoting *Thompkins*, 798 F.3d at 986).

A state court's reliance on *Balliette* constitutes an adequate and independent and adequate state procedural bar. Like *Allen*, *Balliette* "governs when a petitioner asserts that he is entitled to an evidentiary hearing." *Id.* A state court's reliance "on the procedural rule set forth in *Balliette* . . . in concluding that the petitioner's § 974.06 postconviction motion did not entitle him to an evidentiary hearing . . . is an independent" and "adequate" state law ground. *Roalson v. Noble*, No. 18-CV-1831-PP, 2022 U.S. Dist. LEXIS 178437, at *19 (E.D. Wis. Sept. 30, 2022) (citing *Lee*, 750 F.3d at 694); *see also Norwood v. Eplett*, No. 23-CV-11360JPS, 2024 U.S. Dist. LEXIS 140081, at *18 (E.D. Wis. Aug. 7, 2024) (same).

Petitioner disputes that the Wisconsin Court of Appeals disposed of his ineffective assistance of counsel and appellate counsel claims based on *Balliette*. ECF No. 22 at 2. Petitioner concedes that "an ineffective assistance claim can be procedurally denied for the failure to allege sufficient facts regarding deficient performance or prejudice," but he maintains that that is not what happened here. *Id.*; *id.* at 4 ("Neither the trial court nor the court of appeals found that his [§ 974.06] motion pleaded insufficient facts."). Instead, he contends that the Wisconsin Court of Appeals denied his claim on the merits by "determin[ing] that there is no prejudice based on the sufficiently pleaded facts." *Id.* at 2.

There may be some credence to this argument. On the one hand, that the state court performs a "*Strickland* analysis"—as the Wisconsin Court of Appeals did here—does not necessarily mean that the court did not dispose of the ground on procedural grounds. *Whyte v. Winkleski*, 34 F.4th 617, 627 (7th Cir. 2022). At the same time, however, the state court's mere recitation

of its procedural rule—such as that under *Allen* or *Balliette*—is, in and of itself, not necessarily sufficient to show that the court in fact relied on that rule in reaching its decision. *Id.* (citing *Sanders v. Cotton*, 398 F.3d 572, 579 (7th Cir. 2005)). While the Wisconsin Court of Appeals in this case began its analysis with a recitation of *Balliette*'s rule, the discussion that followed does seem rather untethered to that rule. ECF No. 16-2 at 6–7. *Balliette* addresses the question of whether a § 974.06 motion is "sufficient on its face to entitle [the movant] to an evidentiary hearing." 805 N.W.2d, ¶ 18. It instructs the state court to evaluate whether the motion "raises sufficient facts" or, in contrast, "presents only conclusory allegations." *Id.* (quoting *Allen*, 682 N.W.2d, ¶ 9). It is, in other words, a question of pleading sufficiency and asks whether "the allegations in [the] § 974.06 motion . . . provide sufficient material facts that, if proven, demonstrate an entitlement to the relief sought." *Id.*, ¶ 79.

Notwithstanding the Wisconsin Court of Appeals' recitation of *Balliette*'s standard, it did not frame its analysis within that standard, asking not whether the § 974.06 motion raised sufficient facts on its face, but instead moving directly to the question of whether "[Petitioner] can show that he was prejudiced by the exclusion of his limp demonstration." ECF No. 16-2 at 5. The Court is therefore hesitant to conclude that the Wisconsin Court of Appeals in this case truly rested its decision on an independent and adequate state law ground such that this Court's merits review would be barred.

### 4.2.2 Merits

Even if the ground is not procedurally defaulted, however, it nevertheless fails on its merits.

The Wisconsin Court of Appeals did not address the deficient performance prong under *Strickland v. Washington*, 466 U.S. 668 (1984). It instead concluded that trial counsel was not constitutionally deficient for failing to challenge on constitutional grounds the trial court's incorrect conclusion regarding whether demonstrating Petitioner's limp to the jury would expose him to cross examination, because the absence of that evidence (the limp demonstration) had no reasonable probability of affecting the outcome of the trial. ECF No. 16-2 at 5–6. Said otherwise, trial counsel was not constitutionally ineffective for not getting that evidence in because "the evidence against [Petitioner] was . . . powerful" enough that it wouldn't have made a difference. *Id.* That being the case, Petitioner's appellate counsel could not have been constitutionally ineffective for failing to challenge trial counsel's ineffectiveness on that ground.

The Court cannot conclude that this conclusion ran contrary to or resulted from an unreasonable application of federal law. "Under *Strickland*, [Petitioner] must show both that his counsel's performance was deficient and that he was prejudiced as a result." *Gage v. Richardson*, 978 F.3d 522, 527 (7th Cir. 2020) (citing *Strickland*, 466 U.S. at 687). If the defendant/petitioner fails to make a sufficient showing on one prong, the reviewing court need not address the other one. *Id.* (citing *Morales v. Johnson*, 659 F.3d 588, 600 (7th Cir. 2011)).[1]

"[T]he prejudice prong requires the petitioner to 'affirmatively prove prejudice,' such that 'there is a reasonable probability that, but for counsel's

---

[1] Such is the case here. Accordingly, the Court declines Petitioner's invitation to analyze the deficient performance prong de novo. ECF No. 17 at 8; *Adeyanju v. Wiersma*, 12 F.4th 669, 676 (7th Cir. 2021) ("When the petitioner's arguments concerning the prejudice prong fail, as here, we need not address whether counsel's performance was deficient." (citing *Thill v. Richardson*, 996 F.3d 469, 476–77 (7th Cir. 2021))).

unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 528 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). The Wisconsin Court of Appeals correctly cited that standard; Petitioner explicitly concedes this. *See* ECF No. 17 at 17.

The Wisconsin Court of Appeals "provided a terse but sufficient explanation" for why there was no reasonable probability of a different outcome had Petitioner provided a demonstration of his limp to the jury; indeed, "state court decisions receive 'significant deference even if they provide no reasons at all.'" *Gage*, 978 F.3d at 530 (citing *Dassey v. Dittmann*, 877 F.3d 297, 312–14 (7th Cir. 2017)); *Thill*, 996 F.3d at 480 (quoting *Dassey*, 877 F.3d at 314). The Wisconsin Court of Appeals noted that the "evidence against [Petitioner] was very powerful"—an entirely reasonable conclusion, and one relevant to the analysis since "a court hearing an ineffectiveness claim must consider the totality of the evidence before the . . . jury" and since "a verdict . . . only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." ECF No. 16-2 at 6; *Strickland*, 466 U.S. at 695–96.

The evidence of Petitioner's guilt was, in fact, overwhelming. Petitioner disputes that characterization, but the Court cannot conclude that the Wisconsin Court of Appeals was objectively unreasonable in making it. Petitioner had worked with DK in the past and therefore knew that she dealt in cash. His girlfriend, Noel, frequently assisted DK with those cash withdrawals, and in fact did so just fifteen minutes before the robbery. DK believed that the robber had been waiting for her at her house, which indicates that the robber had to be someone who knew—for

example, through a girlfriend who worked at the bank—that DK would be coming from the bank with a large sum of cash. The individual who robbed DK apparently made no attempt to also take her purse and/or wallet, which allowed an officer to reasonably infer that the robber knew that DK had just obtained a large sum of cash and to infer that her being robbed immediately after arriving home straight from the bank was not, in fact, a mere coincidence.

DK described the robber as a 5'11" Black man—a description that Petitioner matches almost exactly. Wisconsin Offender Detail, Demographics, WIS. DEP'T OF CORR., available at https://appsdoc.wi.gov/lop/details/detail (last visited Sept. 19, 2024) (listing Petitioner's race as Black and his height as 6'0"). She also reported that the robber had a limp—a description that also matches Petitioner. A police dog tracked the robber's scent from DK's house along a route on which the dog alerted to a latex glove of a type that Petitioner was known to use and which contained Petitioner's DNA. Petitioner's cell phone "pinged" off a cell tower just 0.6 miles from DK's house at the time of the robbery. DK also averred that the robber was armed with a gun, and a gun case and ammunition were found in Petitioner's house. All this evidence was, in the aggregate, damning. That being the case, it was entirely reasonable for the Wisconsin Court of Appeals to find that the evidence sought to be admitted—Petitioner's demonstration of his limp—utterly paled in comparison, and the admission of which had no reasonable probability of achieving a different outcome, even when considered in conjunction with Petitioner's innocent explanation for why he—and a latex glove with his DNA on it—may have been in the area at the time. *See McAfee v. Thurmer*, 589 F.3d 353, 357 (7th Cir. 2009) (defendant was not prejudiced by counsel's

alleged error where evidence against him was "overwhelming"); *Thill*, 996 F.3d at 479–80 (same); *Myers v. Neal*, 975 F.3d 611, 624 (7th Cir. 2020) ("[W]hen taken together, the evidence of [the petitioner's] guilt overwhelmed any prejudicial effect of defense counsel's failings. The weight of the state's case against [the petitioner] prevents him from showing that he suffered substantial prejudice from his trial counsel's errors." (citing *Strickland*, 466 U.S. at 696 and *Cook v. Foster*, 98 F.3d 896, 909 (7th Cir. 2020))).

Petitioner emphasizes the lack of direct evidence against him. ECF No. 17 at 18. But "[c]ircumstantial evidence is not less probative than direct evidence and, in some cases[,] is even more reliable." *United States v. Balzano*, 916 F.2d 1273, 1284 (7th Cir. 1990) (quoting *United States v. Grier*, 866 F.2d 908, 923 (7th Cir. 1989)); *see also Black & Decker Corp. v. Positec USA, Inc.*, No. 11-cv-5426, 2015 U.S. Dist. LEXIS 42968, at *83 (N.D. Ill. Mar. 31, 2015) (collecting sources) (rejecting movant's characterization of evidence as "merely" circumstantial).

Also relevant is the fact that it is not at all clear that a demonstration of Petitioner's limp would have had the significantly exculpatory effect that he insists that it would have had. *See Strickland*, 466 U.S. at 699–700. It was not disputed at trial that Petitioner had a limp—the only dispute with respect to the limp was, according to Petitioner, "to what extent [Petitioner's] movement was impaired by" it. ECF No. 17 at 11. But he concedes that DK was unable to testify as to the particularities of the limp that she witnessed—for example, whether it presented in any particular way. *Id.* at 12 ("[DK] admittedly did not recall whether it was sleight [sic], significant, exaggerated, or even possibly contrived."). Petitioner could not have demonstrated, therefore, that his limp appeared differently than that

testified to by DK, because DK herself did not describe the appearance of the limp.

Petitioner sought to demonstrate that, due to his limp, he could not have been the individual that DK described as moving "quickly" and could not "have traversed the distance from [DK's] house to the getaway spot in time to avoid police," ECF No. 17 at 9, 12, but "quickly" is relative and thus not easily contrasted or disproved, and in any event the jury very well may have suspected that Petitioner's self-serving demonstration of his limp was exaggerated or curated to support his defense. Moreover, Noel gave a demonstration and description of Petitioner's limp for the jury, and Petitioner does not now argue that that demonstration and description were inaccurate or that he would have performed it differently than her. *Cf. Morris v. United States*, 264 F.3d 726, 728–29 (7th Cir. 2001) (no prejudice attributable to counsel's failure to introduce certain evidence where that evidence would be cumulative (citing *United States v. Depoister*, 116 F.3d 292, 295 (7th Cir. 1997) and *Drake v. Clark*, 14 F.3d 351, 356 (7th Cir. 1994)).

In sum, it was not unreasonable for the Wisconsin Court of Appeals to have determined that a demonstration by Petitioner of his limp would not have done much for his defense, particularly when considered against the voluminous evidence against him. That being the case, and as Petitioner concedes, ECF No. 17 at 21, appellate counsel necessarily could not have been constitutionally ineffective for failing to argue trial counsel's ineffectiveness. *Arnold v. Hutchinson*, No 14 C 8501, 2017 U.S. Dist. LEXIS 3260, at *41 (N.D. Ill. Jan. 10, 2017) ("[W]here . . . trial counsel was not ineffective, it is not ineffective for appellate counsel to decline to argue that trial counsel was ineffective . . . ." (citing *Carrion v. Butler*, 835 F.3d 764, 778 (7th Cir. 2016); *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004); and *Stone*

*v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996))); *Martin*, 384 F.3d at 852 ("[B]ecause the underlying trial counsel claim is meritless, there is not [a] reasonable probability that the outcome of the appeal would have been different had counsel raised the issue." (citing *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003))).

5. **CONCLUSION**

As discussed above, even if Petitioner's ground of ineffective assistance of appellate counsel is not procedurally defaulted, it nevertheless fails on its merits. "[F]ederal habeas relief from state convictions is rare" and "reserved for those relatively uncommon cases in which state courts veer well outside the channels of reasonable decision-making . . . ." *Dassey*, 877 F.3d at 302. This is not such a case. Accordingly, the Court is constrained to deny the amended petition and dismiss this action with prejudice.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), a petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). No reasonable jurists could debate whether the amended petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 12, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of September, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.